UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROY BESSLER,

    Plaintiff,

    v.

WEXFORD OF INDIANA LLC,

    Defendant.

Case No. 3:21-CV-691 JD

**OPINION AND ORDER**

The Defendant, Wexford of Indiana, LLC ("Wexford"), has moved for summary judgment on the Plaintiff, Roy Bessler's, lawsuit. (DE 26.) Mr. Bessler, an inmate within the Indiana Department of Corrections ("IDOC"), alleges Wexler violated his constitutional rights and committed torts under Indiana law by failing to provide him adequate medical care for his broken hip. Wexford argues they are entitled to summary judgment as Mr. Bessler has not exhausted his administrative remedies within IDOC prior to filing this suit as required by the Prison Litigation Reform Act ("PLRA"). For the following reasons, the Court grants the motion for summary judgment and Mr. Bessler's complaint will be dismissed without prejudice.

**A. Factual Background**

Mr. Bessler is an inmate housed at the Miami Correction Facility ("MCF"). (DE 1 at 1). While incarcerated at MCF in July 2020, Mr. Bessler fell and severely injured his hip. (*Id.* at 2– 3). Mr. Bessler alleges that following this injury he was diagnosed with an acetabular fracture which was left untreated for 138 days, which is far longer than the standard of care requires for such an injury. (*Id.*) Wexford is the provider of medical services at MCF under a contract with IDOC. (*Id.* at 4.) Mr. Wexler named Wexford in this lawsuit and alleges that through their

deliberate indifference to his serious medical condition and providing inadequate medical treatment they violated his Eighth and Fourteenth Amendment rights under the United States Constitution and his rights under the Indiana Constitution.[1] *(Id.* at 4–6.) He also alleges their actions constitute the Indiana state law torts of intentional infliction of emotional distress and negligent infliction of emotional distress. *(Id*.) Mr. Bessler alleges he filed several grievances with the prison's grievance system related to the substandard medical care he received from Wexford for his hip injury. (*Id.* at 4.) Mr. Bessler did not file any grievances with his complaint, but he did file two as part of his response to this motion. (DE 30-2). These grievances are also included in the grievance history attached to Wexford's motion. (DE 28-3.)

The first grievance, dated July 23, 2020, reads as follows with the form's instructions in italicized text:

> "*Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance*. … coming out of the south kitchen going back to G-249 there are 2 door stops about 2-3 inches high in the concrete that are in the way of offenders going back to the dorm on the north side of the chow-hall. These stops in the concrete need to be removed permanently. My right foot bumped into one of these stops throwing me off balance and as my left food came down in a twisting motion it broke my pelvis which I found out today. Now I need an operation to repair my pelvis because of the position of the door stops being in the concrete instead of upon the wall. *State the relief that you are seeking.* I am missing work and very important law library time. Plus I'm not sure if my hip will work well for the rest of my life. I won't know the

---

[1] Count 1 of Mr. Bessler's complaint was dismissed by this Court in a separate order. (DE 18.)

status of what relief to ask for as I live the rest of my life until my operation is final. I walked a lot for my heart health and at 73 I don't know what the future will hold for me." (DE 28-3 at 3.)

The second grievance, dated January 21, 2021, reads as follows:

"*Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance.* … I have been back from Eshenaz Hospital since 12-12-20. I had major issues with my blood pressure after total hip surgery on 12-3-20 and I continue to have blood pressure issues to this day as verified by the nurses here at MCF I have had atrial fibulation since 2005 and my medication has been changed as my heart rate has jumped from the mid 50's to the high 60's per minute. I need to see a cardiologist to check on my heart and get my meds under control. Have not seen once since 2012 Per an ultrasound at Eshenaz in early Oct. I also found out later I developed a new blood clot from being immobilized in bed from July 18, 2020. A stint was put in before surgery that did actually catch blood clots during hip surgery. I want to get my blood pressure issue under control so I can walk without walker assistance. Please schedule a cardiologist visit. *State the relief that you are seeking.* I need to get my medical issues under control and I believe I need to get the assistance of a cardiologist to get to the root of my blood pressure issues."
(*Id.* at 11.)

### B. Standard of Review

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not a tool to decide legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). There must be more than a mere scintilla of evidence in support of the opposing party's position and "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009); *Anderson*, 477 U.S. at 252. Instead, the opposing party must have "evidence on which the jury could reasonably find" in his or her favor. *Anderson*, 477 U.S. at 252.

### C. Discussion

Wexford argues they are entitled to summary judgment as Mr. Bessler did not exhaust his administrative remedies within IDOC before filing his lawsuit. Specifically, Wexford argues that Mr. Bessler never filed a grievance regarding his allegedly deficient medical treatment despite filing grievances related to other issues. In response Mr. Bessler argues that he is excused from the exhaustion requirement as the grievance process was effectively unavailable to him, and that he filed two grievances which related to his medical treatment. The Court agrees with Wexford and will grant their motion.

Under the Prison Litigation Reform Act, prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (emphasis added). Nevertheless, "[f]ailure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). This requires that the prisoner complete each step of the grievance process, including appeals. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004) (internal citations omitted). However, a prisoner can be excused from exhausting if the grievance process was effectively unavailable. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). A dismissal for failure to exhaust is without prejudice and does not bar reinstatement of the suit unless it is too late to exhaust. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (internal citations omitted).

The question of whether a plaintiff has exhausted their administrative remedies is one for the Court, and often decided after the Court conducts a *Pavey* hearing. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2009). However, if the Court can resolve the question of exhaustion based on the documentary evidence, a hearing is unnecessary and the Court may simply rule on the motion without conducting a *Pavey* hearing. *Salley v. Parker*, 2020 WL 4736412, *6–7 (N.D. Ill. Aug.

14, 2020); *see also Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (affirming summary judgment when the district court did not conduct a *Pavey* hearing). In determining whether a *Pavey* hearing is necessary, the Court will examine all the evidence in the record. *Salley*, 2020 WL 4736412 at *7. Neither party in this case has moved for a *Pavey* hearing, or suggested one is necessary to resolve the exhaustion issue. After considering all the evidence in the record the Court finds that a *Pavey* hearing is unnecessary. The issue of exhaustion turns solely on review of Mr. Bessler's written grievances which, in this case, does not require the Court to conduct a hearing to adjudicate.

### (1) *The grievance process was available to Mr. Bessler*

Mr. Bessler argues that Wexford has not established that he was properly informed of the grievance process by IDOC officials. He argues that this made the grievance process effectively unavailable to him and therefore he is excused from compliance with the exhaustion requirement before brining suit. This argument is without merit.

Mr. Bessler is correct on the broad point that a prisoner can be excused from exhausting the grievance process if the process is effectively unavailable. *Woodford*, 548 U.S. at 102. Further, the burden is on the defendant to show the administrative process was available. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). In this case however, Wexford has met their burden. Wexford produced an affidavit from the Grievance Specialist at MCF indicating all new inmates receive written notification of the grievance procedures as part of their Admission and Orientation paperwork. (DE 28-1 ¶ 6.) Mr. Bessler has provided no evidence to suggest this process was not followed with him. Therefore, Mr. Bessler's implied argument that IDOC did not provide him proper notification is speculative and fails on summary judgment. *Trade Fin. Partners*, 573 F.3d at 407; *Anderson*, 477 U.S. at 252.

Further, the evidence in the record establishes that the grievance process was available to Mr. Bessler. Prison records indicate Mr. Bessler filed multiple grievances and one appeal of a grievance with prison officials beginning in 2012. (DE 28-3 at 1–14.) This is strong evidence that Mr. Bessler was informed of and had access to the grievance process. Notably, one of these grievances, filed in January 2021, specifically sought medical treatment for a different issue than the one underlying this lawsuit. (DE 28-3 at 11.) This is strong evidence Mr. Bessler specifically knew how to utilize the grievance process to address issues with his medical care.

Moreover, despite Mr. Bessler's arguments to the contrary, the fact that Wexford has not provided copies of the orientation paperwork he received outlining the grievance process or offered specific evidence that he personally received that paperwork do not undermine the evidence showing he had knowledge of, and access to, the IDOC grievance process.[2] Mr. Bessler's remaining arguments suggesting his ignorance of the process, such as that he is elderly and has no medical or legal training, are equally unavailing as they are contradicted by the fact that he repeatedly utilized the grievance process.

Mr. Bessler also argues that he was not required to exhaust because there was no remedy IDOC, or Wexford, could offer for the subject of his grievance. In support of this proposition Mr. Bessler cites to *White v. Bukowski*, 800 F.3d 392, 396 (7th Cir. 2015). *White* held that a pregnant female inmate was not required to exhaust her claim over delays in transportation to the hospital to deliver her baby which allegedly resulted in birth defects. *Id.* at 395–96. The Seventh Circuit held that she was not required to grieve this issue because it was too late for her to obtain any remedy from a grievance, as there was no remedy for the birth defects within the jail's power. *Id.* at 395. The Seventh Circuit, however, took care to note that this logic did not apply with equal

---

[2] Mr. Bessler does not cite to any legal authority requiring Wexford to produce such evidence.

force to the inmate's related claim about not receiving adequate prenatal care for the eleven days prior to birth she was in the jail. *Id.* at 396. The Court noted "[t]he defense of failure to exhaust would be stronger with regard to that claim, since a grievance submitted before the plaintiff gave birth might have elicited improved medical care that could conceivably have averted or at least reduced the birth defects." *Id.*

Mr. Bessler's claim most closely resembles the pre-natal care claim in *White* and not the transportation claim. Mr. Bessler's claim is that he did not receive adequate and prompt medical treatment for his hip injury after it occurred and he was allowed to linger as the condition worsened. A grievance during this time "could have elicited improved medical care that could have averted or at least reduced" his medical problems.[3] *Id.* Therefore, because IDOC and Wexford could have offered a remedy for the subject of his grievance, he was not excused from his duty to exhaust. As such, the Court finds *White* to be inapposite to Mr. Bessler's case and does not excuse his failure to grieve the medical treatment he was receiving for his hip.

Consequently, the Court finds that the grievance process was available to Mr. Bessler and he is subject to the exhaustion requirement of the PLRA.

### (2) *Mr. Bessler did not exhaust the administrative remedy process for his issues related to medical treatment of his hip injury*

Wexford argues that Mr. Bessler never submitted any grievances in which he complained about the medical treatment he was receiving for his hip injury, and therefore he has failed to exhaust regarding this issue. As noted above, Mr. Bessler's complaint states his legal claims are

---

[3] Mr. Bessler also argues that by the time he was able to discover the inadequacy of the medical treatment he received; it would have been beyond the time to comply with the grievance procedures. (DE 30 at 11). The Court finds this argument to be waived as underdeveloped as Mr. Bessler does not indicate when he allegedly discovered the inadequacy or why that is outside the timeframe he could have complied with the grievance procedure. *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020) (Arguments that are underdeveloped, cursory, and lack supporting authority are waived).

8

based on Wexford's alleged 138-day delay in getting him adequate medical treatment for his hip injury and related acts of mismanaging that injury. (DE 1 ¶¶ 15–34.)

Mr. Bessler argues that two grievances he submitted constitute notice to Wexford of his complaints regarding the treatment of his hip injury and therefore satisfy the exhaustion requirement. The first grievance, filed on July 23, 2020, is a request for IDOC to remove the door stops he alleges he tripped on and caused his hip injury. (DE 28-3 at 3.) In this grievance Mr. Bessler also states that due to his injury "Now I need an operation to repair my pelvis because of the position of the door stops…." (*Id.*) The second grievance, filed on January 21, 2021, is a request for a cardiologist visit due to issues with his blood pressure he was experiencing after his hip surgery. (*Id.* at 11.) Wexford argues that neither of these grievances addresses the issue underlying Mr. Bessler's lawsuit, the medical treatment of his hip injury, and therefore they cannot satisfy the exhaustion requirement. The Court agrees with Wexford.

*(a) None of the grievances Mr. Bessler filed raise the issue of his medical treatment for his hip injury*

The Court finds that neither grievance raises the issue underlying Mr. Bessler's lawsuit. The Court begins with Mr. Bessler's first proffered grievance dated July 23, 2020. Even construing this grievance in the light most favorable to Mr. Bessler, the Court cannot conclude it grieves his medical treatment regarding his hip injury. Mr. Bessler only passingly refers to medical treatment in this grievance. First, he notes that the injury caused by the doorstop was so severe he now requires surgery (*Id.*) Second, he indicates he doesn't know "the status of what relief to ask for as I live the rest of my life until my operation is final." (*Id.*) Neither of these statements constitute a comment on the quality of medical treatment he was receiving, a claim that his treatment was inadequate, or a request for additional or different treatment.

9

Exhaustion is designed to provide the prison with notice of the problem and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). The requirement of what to include in a grievance is governed by prison rules for the grievance process. *Id.* at 720–21. When the grievance process rules are silent, a grievance will be sufficient if it alerts the prison to the nature of the wrong for which redress is sought. *Hogan v. Neal*, 2022 WL 3448778, *6 (N.D. Ind. July 12, 2022) (citing *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002)). This does not require the inmate to lay out the facts, articulate legal theories, or demand particular relief, rather all the grievance needs to do is "'object intelligibly to some asserted shortcoming.'" *Id.* (quoting *Strong*, 297 F.3d at 649).

IDOC's grievance form, State Form 45471, on its face asks for a "brief, clear statement of complaint or concern" and instructs the inmate to "State the relief that you are seeking." (DE 28-3 at 3.) Mr. Bessler doesn't respond to either instruction with any discussion of the medical treatment for his hip injury. This grievance was not sufficient to put the prison on notice of a problem with Mr. Bessler's medical treatment because it never objects to the way Mr. Bessler's hip is being treated by the prison or even alleges a shortcoming in that treatment. Rather, Mr. Bessler solely objects to the alleged shortcoming of the prison's doorstop placement. Therefore, because Mr. Bessler's grievance did not put the prison on notice of the issue he is now suing over, granting summary judgment on exhaustion is appropriate. *Maddox*, 655 F.3d at 720 (affirming a grant summary judgment on exhaustion where plaintiff's grievance did not address the issue which he later brought suit over).

The second grievance, filed on January 21, 2021, is a request by Mr. Bessler to see a cardiologist regarding blood pressure issues that emerged after his hip surgery. (DE 28-3 at 11.) In this grievance, Mr. Bessler outlines a medical problem he is experiencing, his high blood

10

pressure. (*Id.*) He also requests specific relief for that problem, a visit to a cardiologist. (*Id.*) However, this grievance does not address the medical issue underlying Mr. Bessler's lawsuit, which was the medical treatment related to his hip injury prior to his surgery. Further, this grievance was filed after he returned from the hospital and had received his hip surgery. (*Id.*) It makes no reference to his lawsuit's allegations that his surgery was unduly delayed or any medical treatment of his hip besides the surgery. (*Id.*)

Mr. Bessler grieving an unrelated medical issue does not put the prison on notice that he was, or had, experienced problems with the medical treatment for his hip injury. As previously discussed regarding Ms. Bessler's first grievance, this is not enough to satisfy the requirements of the grievance process and put IDOC and Wexford on notice of his issue. *Maddox*, 655 F.3d at 720; *Hogan*, 2022 WL 3448778 at *6. Therefore, the Court cannot find this grievance raises the issue of Mr. Bessler's hip injury treatment. Consequently, it is not enough to exhaust the administrative remedies.

Mr. Bessler also argues that he grieved his medical treatment because the response to his July 23, 2020, grievance refers to his hip injury.[4] This reply, dated August 27, 2020, specifically states "Please follow the provider's order to assist in regaining your quality of life." (DE 28-3 at 6.) Mr. Bessler's argument seems to be that because IDOC referred in passing to his medical rehabilitation in their reply to this grievance, almost exclusively focused on the issue of the doorstop, they understood it as a grievance related to medical treatment. (DE 30 at 8.)

This argument is unpersuasive. Mr. Bessler does not explain why this remark indicates he was grieving his medical issue. As previously discussed, his grievance does not allege

---

[4] Mr. Bessler's briefing refers to this as the response to the appeal of his grievance, but the record indicates this was the response to his initial grievance. (DE 28-3 at 6.)

inadequate or untimely medical treatment for his hip injury. It does discuss that he is missing work and law library time, that he is unsure if his hip will "work well for the rest of [his] life," and that he previously walked a lot for his heart health. (DE 28-3 at 6.) He further indicates he "won't know the status of what relief to ask for as I live the rest of my life until my operation is final." (*Id.*) In this context, the IDOC response instructing him to "follow the provider's order to assist in regaining your quality of life" seems to be a direct response to Mr. Bessler's concerns about the limitations the hip injury imposed on him and not evidence that IDOC understood this grievance to be about inadequate medical treatment. (*Id.*)

The Court cannot find that Mr. Bessler's description of the hardship his injury has caused him, in a grievance seeking the prison to remediate the cause of that injury, equates to a grievance regarding the adequacy of Mr. Bessler's medical treatment for that injury. Therefore, even if Mr. Bessler had fully prosecuted this grievance through the administrative process, its content would be insufficient to grieve his medical treatment. As such, summary judgment for exhaustion is appropriate.

The Court will briefly note that it need not discuss the issue of whether the categorization of the grievances as "safety" instead of "medical" is of any significance in determining exhaustion. Wexford's statement of undisputed material facts noted that Mr. Bessler's July 2020 grievance was categorized as concerning safety measures at MCF and not medical treatment. (DE 27 at 4.) Mr. Bessler interpreted this as an argument that the categorization of grievances, which seems to be conducted by prison staff and not the inmates, was determinative of what issues the grievance raised. Mr. Bessler then disputed that point. In their reply brief, Wexford clarified that they were not making such an argument and that the category designation of the grievance was immaterial to the specific complaints the inmate was making and the notice those

complaints provided to the appropriate authorities. (DE 32 at 3.) As the parties agree the categorization of the grievance is not of legal significance to this motion, the Court will not address the issue.

*(b) Mr. Bessler did not prosecute any grievance through all three stages of the grievance process*

Even if either of these grievances raised the issue of Mr. Bessler's medical treatment related to his hip injury, in the alternative, the Court would find Mr. Bessler failed to exhaust the administrative remedies because he did not appeal any grievance through the entire three step process. *Dole*, 438 F.3d at 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo,* 286 F.3d at 1025). Exhaustion requires that the prisoner complete each step of grievance process, including appeals. *Ford*, 362 F.3d at 397; *Salley*, 2020 WL 4736412 at *8 (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Substantial compliance with that process is not enough. *Lewis v. Washington*, 300 F.3d 829, 833–34 (7th Cir. 2002).

The parties do not dispute that the grievance process in IDOC consists of three steps. (DE 27 at 3–4; DE 30 at 6–7.) The first step is for the inmate to file Form 45471 with the Grievance Specialist of the facility. (DE 27 at 3–4) If the inmate is unsatisfied with the response to the first step, they can then appeal that response by filing Form 45473 with the Warden/the Warden's Designee. (*Id.*) If the inmate is unsatisfied with the Warden's response, he may then file an "Offender Grievance Appeal" with the Department Offender Grievance Manager. (*Id.*) Mr. Bessler completed step two of this process for his July 23, 2020, grievance but did not pursue step three according to the IDOC records. (DE 28-3). Mr. Bessler only pursued the first step regarding his January 21, 2021, grievance. (*Id.*) Therefore, even if both the grievances did

13

address Mr. Bessler's hip injury related medical treatment, his failure to fully prosecute them through the entire administrative process means he did not exhaust that process. Mr. Bessler offers no explanation why he did not pursue any of these grievances through the full process. Consequently, the Court could conclude that he has exhausted his administrative remedies.

### D. Conclusion

The Court finds that the IDOC grievance system was available to Mr. Bessler and that he failed to exhaust his administrative remedies regarding the medical treatment for his hip injury. Accordingly, Wexford's motion for summary judgment based on Mr. Bessler's failure to exhaust his administrative remedies is GRANTED. (DE 26.) Mr. Bessler's claims are DISMISSSED without prejudice. The Clerk is DIRECTED to CLOSE this case.

SO ORDERED.

ENTERED: November 2, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court